IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORIO CARMONA, ) | |
| ) | |
| Plaintiff, ) | Case No. 15-cv-00462 |
| ) | |
| v. ) | Hon. Amy J. St. Eve |
| ) | |
| CITY OF CHICAGO *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Chicago's motion to dismiss Plaintiff Gregorio Carmona's *Monell* claim, Count IV of the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 81.) For the following reasons, the Court grants the City's motion.

## BACKGROUND

The Court assumes familiarity with Carmona's initial Complaint (R. 1), and the Court's Memorandum Opinion and Order (R. 74) granting the City's first motion to dismiss. In short, the initial Complaint alleged that in the wake of a fire at Carmona's residence in January 2013, emergency personnel rushed him and another woman to the hospital. (R. 1 ¶ 13.) The woman died soon after, and Chicago Police Department officers interrogated Carmona in the hospital. (*Id.* ¶¶ 14–15.) Carmona claimed that the officers handcuffed him to the bed, failed to read him *Miranda* rights, and prevented him from speaking to his family or friends. (*Id.* ¶¶ 16–21.) Carmona also claimed that the officers' questions were coercive and designed to elicit incriminating responses. (*Id.* ¶¶ 22–25, 28.) The officers then arrested Carmona, and he was jailed without bond. (*Id.* ¶¶ 27, 32–33.) Meanwhile, one defendant-officer prepared a search warrant for Carmona's vehicle without probable cause, according to Carmona. (*Id.* ¶¶ 29–31.)

The initial Complaint claimed that these constitutional violations "were caused by the deliberate indifference of" the City, and therefore sought to hold it liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The Court, however, granted the City's motion to dismiss that *Monell* claim without prejudice. It held that Carmona's allegations were conclusory and boilerplate. Carmona, moreover, had pleaded only a single act of misconduct—his own. He had also failed to otherwise plead enough facts to allow the Court to infer that his constitutional injuries were the result of a widespread custom.

The Amended Complaint (R. 78) added allegations seeking to rectify those deficiencies. In support of its realleged *Monell* claim, the Amended Complaint further alleges that Carmona "is not the only individual that was wrongfully charged with arson and/or murder by the Chicago Police Department that has been cleared of all charges"—"Arthur Brown, Adam Grey, Lathierial Boyd and others" were as well. (*Id.* ¶ 61.) The Amended Complaint also newly alleges that the City "does not conduct investigations" into anything but the "most egregious violations" of police-officer misconduct. (*Id.* ¶¶ 56–57.) Specifically, it alleges that "[a]s a matter of both policy and practice, the City fails to enforce General Order[s]" relating to how investigations should be conducted, how to process a crime scene, and how to conduct interrogations. (*Id.* ¶¶ 58.j.–l.) It also adds an allegation that the City "allows" officers to "coach and/or intimidate" witnesses. (*Id.* ¶ 58.m.) The Amended Complaint, lastly, cites to several Rules of Conduct and an Ethics Code that the "Defendant officers" violated, violations for which the City did not discipline them. (*Id.* ¶¶ 58.a.–58.g.)

**LEGAL STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) challenge, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Courts, of course, accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017); *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). After "excising the allegations not entitled to the presumption" of truth, courts "determine whether the remaining factual allegations plausibly suggest an entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## ANALYSIS

As explained in the Court's earlier decision, a *Monell* claim requires a plaintiff to show: (1) he suffered a deprivation of a constitutional right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury. *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). Carmona, here, complains only of a "widespread custom" that cuased his constitutional deprivation.

The Seventh Circuit has declined to adopt any "bright-line rules defining a 'widespread custom,'" but it has held that one instance is, or in some cases even three instances are, insufficient to "demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Office*, 604 F.3d 293, 303 (7th Cir. 2010). That is, while "[t]here is no

magic number of injuries that must occur before its failure to act can be considered deliberately indifferent," *Glisson*, 849 F.3d at 382, "*Monell* claims based on allegations of an unconstitutional municipal practice or custom—as distinct from an official policy—normally require evidence that the identified practice or custom caused multiple injuries," *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016); *see also Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008) (stating, "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to [one individual's] experience," but "what is needed is evidence that there is a true municipal [or corporate] policy at issue not a random event").

In determining whether a plaintiff has sufficiently pleaded a widespread-custom claim, courts in this district have looked to the specific instances of misconduct alleged. *See, e.g.*, *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 892 (N.D. Ill. 2016) (considering, among other things, allegations of "ninety complaint[s]" lodged against the City); *Arita v. Wexford Health Sources, Inc.*, No. 15-CV-01173, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) (rejecting *Monell* claim because there were no allegations of misconduct outside plaintiff's own experience); *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (same). Courts, otherwise, have focused on the circumstances surrounding the plaintiff's constitutional affront, and additional facts probative of a widespread custom. *See, e.g.*, *Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (description of own incident plus citation to two reports highlighting CPD's excessive force similar to plaintiff's injuries stated a claim); *Listenbee v. City of Harvey*, No. 11 C 03031, 2013 WL 5567552, at *3 (N.D. Ill. Oct. 9, 2013) (severity of single incident plus a 2012 Department of Justice report sufficed to state a claim). In *White v. City of Chicago*, for example, the Seventh Circuit decided allegations that officers had obtained a warrant for the

4

plaintiff's arrest based on nothing but rank suspicion, plus the CPD's "standard printed form" for warrant applications that officers generally used for all warrants—which was attached to the complaint, and, on its face, did not require officer-applicants to provide "factual support" when making requests—sufficed to state a *Monell* claim.  829 F.3d 837, 844 (7th Cir. 2016) (making clear that federal courts "may not apply a 'heightened pleading standard'" to *Monell* claims); *see also Stokes v. Ewing*, No. 16 C 10621, 2017 WL 2224882, at *4 (N.D. Ill. May 22, 2017) ("Post-*White* courts analyzing *Monell* suits have scotched motions to dismiss premised on the" argument that more than one incident must be alleged to state a claim) (citing cases).  In either event, the principle is the same: a court must "draw on its judicial experience and common sense" to decide whether, in the context of a particular claim, there is enough "factual content that allows the court" to infer a widespread custom.  *Iqbal*, 556 U.S. at 679; *McCauley*, 671 F.3d at 616.

Doing so here, the Court concludes that Carmona has not stated a *Monell* claim against the City.  Carmona's amended allegations attempt to plead a grave but amorphous custom.  He alleges that the City's deliberate indifference to a litany of constitutional rights—including, in his case, Fourth, Fifth, and Fourteenth Amendment rights—gave way to a general and pervasive failure to discipline officers who break internal policies, ethical rules, and orders, which in turn resulted in several constitutional injuries to himself and others.  Plausibly pleading such a "vague and broad" custom, and connecting it to Carmona's claims, necessarily requires more than bare factual allegations and conclusory recitals.  *Hill v. City of Chicago*, No. 13 C 4847, 2014 WL 1978407, at *7 (N.D. Ill. May 14, 2014); *see McCauley*, 671 F.3d at 616–17 ("The required level of factual specificity rises with the complexity of the claim.") (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case . . . will require more detail, both to

5

give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.")).

Carmona has added allegations that the City "fails to enforce General Order[s]" relating to how investigations should be conducted, how to process a crime scene, and how to conduct interrogations, and that it "allows" officers to coach or intimidate witnesses. (R. 78 ¶¶ 58.j.–m.) Those claims are less boilerplate than his initial allegations to be sure, but they are nevertheless conclusory. *See McCauley*, 671 F.3d at 617 (disregarding as conclusory allegations that the City "has an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence," that there was "no rational basis" for that policy"). Similarly, Carmona newly alleges that the City failed to discipline the "Defendant officers" for violating several internal rules and codes. (R. 78 ¶¶ 58a.–g.) But those allegations, even if factual, speak only to *his* constitutional deprivation; they do not suggest a failure to discipline beyond his particular case. *Accord Winchester v. Marketti*, No. 11-cv-9224, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."); *Jones v. Feinerman*, No. 09 C 03916, 2011 WL 4501405, at *6 (N.D. Ill. Sept. 28, 2011) (dismissing claim because plaintiff alleged deliberate indifference that was limited "only to him").[1] Such conclusions and limited facts do not help the Court conclude that the sprawling custom Carmona seeks to allege is plausible.

---

[1] Carmona's reliance on *Warfield v. City of Chicago*, 565 F. Supp. 2d 948 (N.D. Ill. 2008), is misplaced. That case does not hold, as Carmona suggests, that the mere "allegation" that the City "turned a blind eye to" misconduct suffices at the motion-to-dismiss stage. Rather, that summary-judgment decision simply allowed the *Monell* claim based on violations for which there was an issue of fact to proceed, and dismissed the *Monell* claim relating to violations for which there was not, as the court had stayed all *Monell* discovery.

Nor does Carmona's reference to three other individuals who were "wrongfully charged with arson and/or murder" and later cleared. (R. 78 ¶¶ 61.) Conspicuously, Carmona does not allege, even in conclusory form, that those individuals' constitutional injuries were the result of the widespread custom. Even if he did, the Court would have no basis to find that conclusion plausible, as Carmona does not provide any facts of those cases. *See Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759, at *4 (N.D. Ill. Oct. 22, 2015) (disregarding references to purportedly similar incidents because they were conclusory); *Henderson v. City of Chicago*, No. 14 C 1164, 2015 WL 1954464, at *2 (N.D. Ill. Apr. 29, 2015) (same). That three other individuals were "wrongfully charged" does not indicate that their constitutional deprivations were similar to and caused by the same custom as Carmona's. *See Bridges v. Dart*, No. 16 CV 4635, 2017 WL 1375549, at *2 (N.D. Ill. Apr. 17, 2017) (reference to other incidents which did not implicate the complained-of practice did not support an inference of a *Monell* violation); *Sims v. Cook Cnty.*, No. 15 C 1094, 2016 WL 1392322, at *2 (N.D. Ill. Apr. 8, 2016) (three other allegedly similar instances that were claimed to be a part of the same pattern in conclusory form were insufficient to state a claim). No matter how favorably to Carmona the Court reads the Amended Complaint, it cannot conclude that a threadbare reference to three others who were "wrongfully charged" and later cleared makes plausible his claimed widespread custom.

Finally, Carmona's repeat attempt to salvage his conclusory allegations by attaching the DOJ January 2017 report on the CPD to his Response again fails. Even if the Court were to consider the report—which Carmona does not reference in or attach to his Amended Complaint—his Response's quoting of its general conclusion that the CPD has "broken"

accountability systems and his citation to other swaths of it are too nebulously linked to his claim here. To repeat:

> Plaintiff has not alleged, nor does his Response indicate, how the deficiencies described in the DOJ report relate to Plaintiff's claim that police officers illegally handcuffed and interrogated him in a hospital bed and arrested him without probable cause. . . [T]o allege a *Monell* claim, Plaintiff cannot merely generally allege that the City broadly had a policy that led to officer misconduct—he must allege some factual details about the nature of the policy and how that policy led to his alleged constitutional deprivation. [Citations omitted.] Plaintiff's broad citation to the 160-page DOJ report, without any discussion of the specific findings of the report or any allegations connecting the report findings to the misconduct alleged in his Complaint, is insufficient to support his *Monell* claim.

(R. 74 at 7.) The DOJ report certainly identifies serious shortcomings in CPD's supervisory systems, but the Court cannot countenance it as a master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claim to the report's findings.

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss. It dismisses the Amended Complaint's *Monell* claim, Count IV, with prejudice, and in so doing, denies Carmona's boilerplate request for leave to amend, as he has already had two opportunities to state a plausible *Monell* claim.

**Dated: March 26, 2018**  **ENTERED:**

**AMY J. ST. EVE**
**United States District Court Judge**